## LOUIS FAVROT *v.* ALZIRE ALLAIN et al.

The Union Bank held a mortgage and pledge upon a plantation and the crops, to secure the amount due on a loan on a pledge of stock, which was also secured by a mortgage on the plantation. A judgment creditor caused the sale of the plantation, and became the purchaser, retaining in her hands the amount due to the Union Bank. Another creditor, on a judicial mortgage, claimed the proceeds retained by the purchaser for the Union Bank. It appearing from the evidence that the Union Bank had received a portion of the crops pledged to it, *Held:* that the bank was bound to apply the proceeds to the debt; and the amount thus received was to be deducted from the amount retained, and applied to the payment of the judicial mortgage. Further, that the stock of the bank should be sold, and the proceeds also applied to the payment of the debt due to the bank; and that the surplus thus left in the hands of the purchaser should be applied to the judicial mortgage.

APPEAL from the District Court of West Baton Rouge. *Burk*, J. *J. M. Elam*, for plaintiff. *A Pitot*, for defendants. The judgment of the court, (*Eustis*, C. J., recusing himself on account of relationship,) was pronounced by

PRESTON, J. On the 10th of October, 1846, *Mrs. Dubroca* obtained a judgment, before the District Court of the parish of West Baton Rouge, of separation of property from her husband, *Valentine Dubroca,* and for $29,800, with interest; being the amount of her dotal and paraphernal property received by him during their marriage. A legal mortgage was also decreed in her favor, on all her husband's property, from the date of their marriage, which took place in the parish of West Baton Rouge, on the 10th of April, 1826.

On the 26th of October, 1846, she placed in the hands of the sheriff of the parish, an execution, by virtue of which, on the 4th of November, he seized the plantation of the defendant, with the buildings and improvements thereon; also, fifty-seven slaves, with all the stock and agricultural implements; and, also, his household and kitchen furniture; and advertised and sold the whole in block, on the 5th of December, 1846. The property was appraised in block, at $46,925, and was sold to *Mrs. Dubroca* for $51,619.

The sheriff credited the defendant with the amount of the sale, $51,619; and debited it with the plaintiff's judgment and interest, $29,911 75; also, with a special mortgage in favor of *A. Doussan,* with interest to the 5th of December, 1846, the day of sale, $12,577 50; also, with the amount, with interest, of a special mortgage and pledge in favor of the Union Bank, $8,780; and the costs, $350. The amount of the sale, $51,619.

*Louis Favrot* had obtained judgment against the defendant for $7087 50, with interest, at 8 per cent, from the 21st of June, 1844; had duly recorded it in 1845; issued execution before *Mrs. Dubroca,* and seized and advertised for sale the same property, at the same time. His execution was enjoined, on the ground that it had been issued in the English language alone, the French being his mother tongue.

He contends that the proceeds of the sale under *Mrs. Dubroca's* execution, having been left in her hands to satisfy her claim and other mortgages, he is entitled to the satisfaction of his judgment and judicial mortgage out of the same. He alleges, that *Mrs. Dubrocca* obtained judgment against her husband, for $7000 more than was due to her, and that this sum should be paid over to him. She offered in this suit, oral and documentary evidence in support of the reality of her claims, and has established satisfactorily, that there was due to her the amount for which she obtained judgment against her husband.

The plaintiff next contends, that he is entitled to be paid in preference to the Union Bank; for which institution the sum of $8780 of the price of the adjudication to *Mrs. Dubroca,* was left in her hands. He shows that by a notarial act of pledge and mortgage, made on the 6th of October, 1846, *Dubroca* and wife, in pursuance of the 4th section of an act to facilitate the liquidation of the property banks chartered in this State, approved the 5th fo April, 1843, granted in favor of the Union Bank a privilege and mortgage on the future crops, revenues and resources of the property and slaves by them mortgaged to secure their stock loans, to an amount sufficient to extinguish their indebtedness: the interest and installments to be paid annually, according to the charter of the bank. He contends that *Mrs. Dubroca,* having purchased the property, holds it subject to these annual payments out of the crops, according to her contract. It is a sufficient answer to say, that the property was not sold upon these terms, but for cash.

But it appears by the sheriff's return, that the crop of 1846 was neither seized, appraised nor sold by the sheriff, under *Mrs. Dubroca's* execution. And it further appears, by the testimony of the cashier of the bank, that the indebtedness of *Dubroca* on his stock loan, at the date of the sale, was $7843 70; that

there was paid on the 10th day of December, 1846, five days after the sale, the arrearages of installments and interest, $1181 20; leaving due, $6662 50.

We have no doubt that the payment was made, as it should have been, out of the crop of 1846, which was neither seized nor sold by the sheriff. The privilege given to the Union Bank by the pledge imposed on that corporation, the obligation to pay itself out of the thing pledged; and if it neglected to secure the payment out of the crops, it could not be taken out of the land and negroes, to the prejudice of a creditor having a legal mortgage upon them. Although the produce of but a part of the plantation and slaves was pledged to the bank, there is no doubt the proportion pledged exceeded the above payment. The difference between the sum reserved for the Union Bank, $8780, and the balance due to the bank, $6662 50, amounting to $2117 50, should be paid over with 8 per cent interest, from the 5th of December, 1846, to the plaintiff.

It is not necessary, as contended, to make the Union Bank a party in order to decree to the plaintiff any part of the sum retained for the bank; as it further appears by the testimony of the cashier, that the $8780 was not in point of fact paid to the bank, but remained in the hands of *Mrs. Dubroca;* five or six thousand dollars being still due in 1849, when he gave his testimony. She cannot retain for the bank that which it clearly appears was paid from another source than the adjudication to her. So the Union Bank stock which was pledged to the bank, should have been sold with the land and slaves to pay the debt for which it was pledged, and thereby would have increased the proceeds of the sale to the amount of its value, which increase would have gone to the plaintiff. We doubt whether the land and slaves mortgaged to secure the stock could, under the charter of the bank, be sold under execution, separate from the stock. But whether or not, equity will not allow the defendants to make that separation to the prejudice of another judgment creditor. "*Sic utere tuo ut non lædas alienum,*" is an immemorial maxim of equity. This equity would have compelled the Union Bank, in the exercise of legal measures, to realize the proceeds of the bank stock, and appropriate it to the payment of their debt, and so far have enabled *Favrot* to realize his judgment out of the lands and slaves subject to his judicial mortgage, to the extent of those proceeds. *Mrs. Dubroca*, having sold the land and slaves subject to the claims of the bank, and undertaken to pay the bank out of the price for which it was adjudicated to her, cannot do that which the bank could not do, because injurious to *Favrot*, without benefitting the bank. She cannot pay the bank out of the proceeds of property subject to *Favrot's* judicial mortgage, while the bank has in its possession 205 shares of its stock pledged by an act in which she joined to secure the bank debt. If she had paid the bank, she would have been subrogated to its pledge; but as she has not, as appears by the evidence of the cashier, no other creditor of *Dubroca* can sell the stock to the prejudice of the pledge. And yet, as it is now valuable, neither she nor the bank have the right to prevent its sale to the prejudice of *Favrot*.

The cause should be remanded, to ascertain the value of the stock on the day of the sheriff's sale, and to reduce the amount to be retained for the Union Bank by the amount of that value; and if need be, to make the Union Bank a party, and to cause the stock to be sold; ample security to be given according to the charter of the bank, and the proceeds to be applied to the debt due the bank; and so far to increase the amount to be received out of the proceeds of the sheriff's sale by the plaintiff.

The judgment of the district court is therefore reversed; and it is decreed, that the defendant, *Alzire Dubroca*, do pay to the plaintiff the sum of two thou-

sand one hundred and seventeen dollars, fifty cents, with eight per cent interest, from the 5th of December, 1846, with costs, in both courts. And it is further ordered, that the case be remanded for further proceedings with the regard to the two hundred and five shares of Union Bank stock, according to the views herein expressed.

ROST, J. dissenting. The Union Bank stock was not sold with the plantation and slaves upon which it rests: and so far as the record informs us, it is still the property of *Dubroca*, and the common pledge of his creditors, after satisfying the debt for which it is specially pledged.

I do not perceive how any action of the court, in this case, can give the plaintiff a preference on that stock adversely to the other creditors of *Dubroca*. It appears to me that his only remedy is to pay the debt of the defendant to the Union Bank: he would thereby be subrogated to the rights of the bank in the stock, and entitled, under his judicial mortgage, to recover the sum retained by the defendant to pay that institution.

I think that the judgment of the district court, in relation to the stock, should be affirmed.

## SAME CASE—ON A RE-HEARING.

THE judgment of the court, on a re-hearing, was pronounced by

PRESTON, J. It having been stated in argument, and not denied that the two hundred and five shares of Union Bank stock has been sold, and that the plaintiff became the purchaser, it is unnecessary to remand the cause, for the purpose of causing it to be sold.

The judgment of the district court is therefore reversed; and the court proceeding to render such judgment as in their opinion ought to have been rendered, decrees that the sheriff's sale to *Madam Dubroca*, of the plantation and slaves, be maintained; that the amount retained for the Union Bank, by her, be reduced from eight thousand seven hundred and seventy dollars, to six thousand six hundred and sixty-two dollars, fifty cents; and that the defendant, *Alzire Dubroca*, do pay to the plaintiff the sum of two thousand one hundred and seventeen dollars fifty cents, with 8 per cent interest, from 5th day of December, 1846, until paid. And, further, that *Favrot* recover, by preference, the proceeds of the sale of the two hundred and five shares of Union Bank stock, with 8 per cent interest, from the day of the sale of said stock, only in case the plaintiff was obliged to pay the money; and the defendant is condemned to pay the costs in both courts.